IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RODNEY GREEN, SR.,

    Plaintiff,

v.

MERCY HOUSING, INC., a Nebraska corporation; MERCY HOUSING MANAGEMENT GROUP, INC., a Nebraska corporation d/b/a East Leland Court; MERCY HOUSING CALIFORNIA XXXVIII, a California limited partnership; and DOES 1-10, inclusive,

    Defendants.

No. C 18-04888 WHA

**ORDER RE SUMMARY JUDGMENT**

## INTRODUCTION

In this disability-discrimination action, defendants move for summary judgment. For the reasons below, the motion is **GRANTED**.

## STATEMENT

The essence of this case is that the landlord evicted plaintiff for failure to pay rent, not on account of his race. Plaintiff has also failed to show the landlord neglected to accommodate his disability. Beginning in December 2016, plaintiff Rodney Green, Sr., an African American man, rented a unit at East Leland Court Apartments owned and operated by defendants Mercy Housing, Inc., Mercy Housing Management Group, Inc., and Mercy Housing California XXXVIII. Plaintiff depended on a walking cane for mobility and also needed an in-home care giver (Compl. ¶¶ 6–11).

When plaintiff entered into his lease agreement, defendants told him he would receive accessible parking. When he moved in, however, defendants had already leased the parking spaces closest to plaintiff's unit to a daycare center while he received a space a further from his unit. The building property manager also accused plaintiff's son — who visited plaintiff to provide in-home health care — of engaging in criminal activity and living in plaintiff's unit in violation of plaintiff's rental agreement (*id.* ¶¶ 11–14).

Following these incidents, defendants served plaintiff with a sixty-day notice to terminate his tenancy. Defendants agreed to rescind the notice on the condition that plaintiff not allow his son to come to the apartment. Plaintiff agreed to those terms. Plaintiff later filed a complaint with the California Department of Fair Housing in December 2017 (*id.* ¶ 14). Beginning June 2018, plaintiff failed to pay rent on time, and in October 2018, the Contra Costa Superior Court entered judgment in favor of Mercy Housing and against the Greens, ordering the Greens to return possession of the premises to Mercy Housing (Dkt. No. 76, Ex. E).

Plaintiff filed the complaint in the instant action in August 2018. The complaint currently asserts claims under: (1) California's Disabled Person's Act; (2) California's Unruh Civil Rights Act; (3) the Fair Housing Act; (4) California's Fair Employment and Housing Act; (5) harassment and retaliation under California Government Code § 12955; (6) unlawful interference under California Government Code § 12955.7; and (7) unfair competition under the California Business & Professions Code § 17200 (Dkt. No. 1, 39).

Following various discovery disputes in which the Court ultimately appointed a special master to oversee depositions, defendants filed the instant motion for summary judgment as to all of plaintiff's claims. This order follows full briefing and oral argument.

**ANALYSIS**

Under Rule 56(a), a movant is entitled to summary judgment if "there is no genuine dispute as to any material fact." A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the moving party bears "the initial burden of production and the ultimate burden of persuasion" on summary judgment, *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.

2000), once it has discharged that burden, the nonmovant must "go beyond the pleadings and . . . designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) (internal citation and quotation marks omitted). The nonmoving party's evidence must be sufficient such that the record, taken as a whole, could support a rational trier of fact in finding for the nonmoving party on that issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If conflicting inferences may be drawn from the facts, the case must go to the jury." *LaLonde v. Cnty. Of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).

### 1. REASONABLE ACCOMMODATION.

The Fair Housing Act, the California Disabled Persons Act, the California Unruh Civil Rights Act, and the California Fair Employment and Housing Act all prohibit discrimination against those with disabilities by failing to provide them with reasonable or equal accommodations. Such discrimination occurs if plaintiff (1) suffers from a disability, (2) defendant knew or reasonably should have known of plaintiff's disability; (3) accommodation of the disability may be necessary to afford plaintiff an equal opportunity to use and enjoy his dwelling; and (4) defendant refused to make such accommodation. *McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2004).

Plaintiff alleges defendants refused to make three reasonable accommodations: (1) a parking space near his unit and outside the gate; (2) a walkway clear of overhanging trees; and (3) in-home care. There is no factual dispute that plaintiff meets the first three elements. Rather, the question is whether plaintiff requested these accommodations and defendants refused to make them.

#### A. Parking Space.

Plaintiffs first allege that defendants discriminated against him by failing to providing him with certain parking spaces. Plaintiff moved into East Leland Court Apartments in December 2016. At that point, he was provided assigned access to at least two non-disabled parking spaces (spaces 141 and 31) and unassigned access to two handicapped parking spaces. These spaces were all behind a gate and plaintiff needed to exit through that gate to reach his

3

1 apartment unit. Plaintiff then requested a space closer to his unit and was given one (space
2 136), although defendants indicate plaintiff had been assigned this space from the start. This
3 space was behind the gate as well. There were, however, other parking spaces closer to his unit
4 that were outside the gate, and plaintiff thus began to park there instead. These spaces belonged
5 to the First Baptist Head Start daycare program, not defendants, and that program ultimately
6 towed plaintiff's car after he continued parking there. An image of the parking layout is below.



Regardless of whether plaintiff requested an accommodation for a closer parking space to his unit or not, there is no genuine dispute as to any material fact defendants did not refuse to make a reasonable accommodation for him. Plaintiff at most, requested access to a parking space close to his unit outside the gate. He had access to space 141, one of the closest to the gate as well as two handicapped spaces, the two spaces closest to the gate. The only closer spaces to his unit were those that belonged to the First Baptist Head Start daycare, and that defendants could not provide to plaintiff. Failing to provide plaintiff a parking space somewhere outside the gate and even closer to the apartment unit as he desired was thus was not a failure to provide a reasonable accommodation.

4

### B. Overhanging Trees.

Plaintiff alleges that defendants discriminated against him by failing to clear walkways from overhanging trees. There is no evidence in the record that plaintiff made a request to defendants to do so. Thus, the fact that defendants did not clear the walkways was not a failure to provide a reasonable accommodation.

### C. In-Home Care.

Plaintiff alleges that by banning Elijah Green, plaintiff's son and in-home caregiver from the property, defendants failed to provide plaintiff a reasonable accommodation.

In December 2017, defendants served plaintiff with a 60-day notice to terminate tenancy. The notice stated, among other things, that plaintiff violated the lease because "Elijah B. Green has continued to live in [the] unit" even though he "is an authorized guest" (Dkt. No. 72-5, Ex. JJ). Contrary to defendants' assertions, there is no general dispute of material fact that plaintiff made at least one request following the notice for a reasonable accommodation in regards to Elijah. Specifically, a letter dated December 19, 2017, from plaintiff's attorney at the time to defendants stated, "As a reasonable accommodation Mr. Green requests that you rescind the 60 day notice. . . Mr. Green would even be willing to consider asking his son Elijah to stay away from the property completely for some set period of time in order to preserve his tenancy." The letter also stated that Elijah, "primarily visits Mr. Green to help his disabled father with daily living requirements" (*id.,* Ex. KK). Although plaintiff may not have followed defendants' protocol for formally requesting a reasonable accommodation or live-in attendant, it does not change the fact that a request for a reasonable accommodation was made.

Following this request, however, plaintiff entered into an agreement to continue tenancy in March 2018, which rescinded the 60-day notice as requested and also provided that he would "not allow Elijah B. Green in the property" (*id.,* Ex. NN). Banning Elijah thus was not a refusal of the request for a reasonable accommodation, but rather an agreement reached by the parties. Importantly, the agreement did not ban all in-home caregivers, only Elijah.

Defendants' motion for summary judgment under the FHA, the California Disabled Persons Act, the California Unruh Civil Rights Act, and FEHA on the ground of failure to provide a reasonable accommodation is **GRANTED**.

### 2. RACE AND COLOR DISCRIMINATION.

The FHA, FEHA, and the Unruh Act all prohibit discrimination against an individual on the basis of their race or color. Under the FHA, a plaintiff can establish discrimination by showing "that (1) she is a member of a protected class; (2) she was qualified to receive certain terms, conditions, or privileges of rental; (3) she was denied those terms, conditions, or privileges; and (4) defendant bestowed the terms, conditions, or privileges to a similarly situated party during the time period relatively near when the denial to the plaintiff." *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff may also "produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" defendant's adverse actions. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

After the plaintiff has established the prima facie case, the burden the shifts to defendant to articulate some legitimate, nondiscriminatory reason for the action. Assuming the defendant can successfully rebut the presumption of discrimination, the burden shifts back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual. *McDonnell-Douglas Corp.,* 411 U.S. at 802–03. FEHA tracks the FHA. *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1156 n.14 (9th Cir. 2013).

A plaintiff seeking to establish a claim under the Unruh Act must demonstrate intentional discrimination in public accommodations in violation of the terms of the Act. *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142 (1991), *superseded by statute in part, as recognized in Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664–65 (2009). In other words, if plaintiff cannot meet his burden under the FHA, he cannot meet his burden under the Unruh Act's stricter standard.

Here, the following are the statements that plaintiff alleges Evelyn Singh, property manager, made (Green Decl. Ex. B):

1. "You people are the hardest people to deal with, black people, nigger."
2. "Most black people are more problems for the complex."
3. "Elijah was in the parking lot selling drugs and he is a gangster drug dealer."

Setting aside the evidentiary objections, these alleged statements are despicable and racist, and can work towards establishing a prima facie case of discrimination if plaintiff can also demonstrate that defendants' actions adversely affected him. *Sanghvi v. City of Claremont*, 328 F.3d 532, 536 n.3 (9th Cir. 2003).

Plaintiff contends that defendants enforced rent payment rules in a disparate manner. Specifically, African-American residents were required to pay their rent on time while others were not. As a general matter, being told to pay rent on time is not sufficient to demonstrate discrimination. Unequal enforcement of this rule, however, may be. The problem is that the only evidence of such disparate treatment is a statement from plaintiff stating that he "recall[ed] speaking to other tenants who were not African American, and they regularly paid their rent late. Ms. Evelyn Singh, or someone on her behalf, would leave a note in these tenants' mailbox that would say 'If you are late with your payment don't forget to add $25 fee to your payment'" (Green Decl. ¶ 10). This statement contains multiple layers of hearsay and is thus insufficient to establish plaintiff's prima facie case.

Between January 2017 and June 2018, save for one instance, plaintiff paid his rent within the grace period allowed by the lease. In the one instance he failed to pay within the grace period, defendants allowed plaintiff additional time so he could secure funding from Shelter Inc., a non-profit organization, for his payment (Dkt. No. 72-5, Ex. PP). It wasn't until plaintiff failed to pay multiple months of rent beginning in June 2018 that he was ultimately evicted.

Plaintiff then contends that defendants also enforced unfair parking rules. In particular, he states that he recalled "seeing and speaking to a Mexican-American tenant at Defendants' complex" who owned three cars and "was allowed to park in any parking space, and never had the cars towed or received any warnings" (Green Decl. ¶ 11). He made a similar statement in an intake interview with the Department of Fair Employment & Housing (DFEH) (Dkt. No. 77-

1, 17–24). Again, these statements contain at least one layer of hearsay and are thus insufficient to establish plaintiff's prima facie case.

Plaintiff's other allegations of disparate treatment are that defendants served a 60-day notice and ultimately evicted him due to his race and color. There is no dispute such a notice was served or that plaintiff was ultimately evicted. The notice is thus sufficient to establish a prima facie case. In offering a nondiscriminatory explanation, defendants' 60-day notice itself stated that the reason for the notice was that plaintiff violated multiple provisions in his lease agreement and other housing rules. In particular, the notice stated that plaintiff's son Elijah Green, an authorized guest, parked in unauthorized spaces on the property multiple times, appeared to engage in a drug transaction on the property, smoked marijuana and cigarettes on the property, that he continued to live in the unit even though he was just an authorized guest, and was involved in an incident on the property in which the Antioch Police Department were called in (Dkt. No. 72-5, Ex. JJ). The lease and building rules provided, among other things, that a resident's guest would not engage in criminal activity nor park in unauthorized spaces. Plaintiff has, nonetheless, not provided admissible evidence that the reasons for the notice were pretextual. The record is clear that the vehicles of plaintiff (or his guests) got parked in unauthorized spaces, and that Elijah (or his friends) smoked on the property, and that incidents involving Elijah and the police occurred on the property.

In offering a nondiscriminiatory explanation as to plaintiff's eviction, defendants provide evidence that plaintiff did not pay rent at all for the months of June and July 2018, and that following a stipulation for future judgment which allowed plaintiff a further opportunity to pay rent, he again failed to pay his rent for September, which ultimately resulted in his eviction. Plaintiff has not provided admissible evidence that reasons for the eviction could be pretextual. He failed to pay his rent as required by his lease agreement and was thus evicted.

Because there is no general dispute of material fact that defendants' allegedly discriminatory treatment of plaintiff was not pretextual, defendants' motion for summary judgment as to plaintiff's claims of discrimination on the basis of race or color under the FHA and FEHA is **GRANTED**. Furthermore, because of the Unruh Act's stricter standards for

discrimination, defendants' motion for summary judgment as to plaintiff's claims of discrimination on the basis of race or color under the Unruh Act are also **GRANTED**.

### 3. DEPARTMENT OF FAIR EMPLOYMENT & HOUSING COMPLAINT.

Section 3617 of the FHA provides, that "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected" by the FHA. FEHA contains similar provisions. Cal. Govt. Code §§ 12955, 12955.7. To establish retaliation under these laws, plaintiff must demonstrate (1) he engaged in protected activity; (2) defendants subjected him to an adverse action; and (3) a causal link between the protected activity and the adverse action. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) (citations omitted).

Here, plaintiff alleges in his fifth, sixth, and seventh claims of action that he engaged in a protected activity — *i.e.*, filing a complaint with the DFEH — and that an adverse action occurred as a result — namely, that the property manager confronted him about the complaint, "stopped communicating with Plaintiff and ignoring all his needs," and ultimately evicted him (Compl. ¶ 14).

The needs and requests that plaintiff alleges defendants ignored as a result of his DFEH complaint include his request for a parking space closer to his unit and outside the gate as well as his need for Elijah to be his in-home caregiver. As stated above, defendants accommodated plaintiff's request for a parking space to the extent possible and any further failure to address the request was not an adverse action.

As to Elijah, defendants served the 60-day notice (which stated Elijah violated various provisions of the lease agreement) on December 4, 2017. Plaintiff's counsel at the time then sent a letter on December 19 to defendants proposing that Elijah stay away from the property (Dkt. No. 72-5, Ex. KK). Plaintiff did not submit his pre-complaint inquiry with DFEH until December 26. His intake interview with DFEH did not occur until March 20 (Dkt. No. 77-1, 16–24). Accordingly, the record is clear that plaintiff's filing of a complaint with the DFEH had nothing to do with defendants serving the 60-day notice on him or banning Elijah.

The only other possible claim of retaliation is plaintiff's eviction. There is, however, no causal link between plaintiff's filing of the complaint and his eviction. Plaintiff filed his pre-complaint inquiry with the DFEH in December 2017. Defendants did not initiate eviction proceedings until July 2018 after plaintiff had failed to timely pay his rent for June and July. After the proceedings began, the parties entered a stipulation to allow plaintiff another opportunity to pay. It wasn't until plaintiff again failed to pay his rent and the state court entered judgment granting defendants possession of the unit and rent that plaintiff was ultimately evicted (Dkt. No. 76-1, Ex. A, C, E). Although the eviction proceedings took place after plaintiff filed his complaint with the DFEH, there is no genuine dispute of material fact that the complaint is not what caused the eviction proceedings. *The timeline and documents provided by the parties indicate plaintiff was evicted due to his failure to pay rent; there is no evidence that suggests or even references the DFEH complaint in connection with the eviction.*

Accordingly, defendants' motion for summary judgment as to plaintiff's fifth, sixth, and seventh claims of action are **GRANTED**.

### 4. SECTION 17200.

Under California's Unfair Competition Law, "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. This law establishes three varieties of unfair competition — acts or practices which are unlawful, or unfair, or fraudulent. *Cel Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 180, 183 (1999). Section 17200 "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 *et seq*. and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). Because summary judgment has been granted for defendants on all other claims that plaintiff's section 17200 claim is reliant on, defendants' motion for summary judgment as to plaintiff's section 17200 claim is also **GRANTED.**

5.  **REQUEST FOR CONTINUANCE AND EVIDENTIARY OBJECTIONS.**

Plaintiff has requested a continuance on the underlying motion so that he can (1) depose Evelyn Singh; (2) retain an expert on handwriting; and (3) request defendants to produce originals of plaintiff's lease application. Counsel for both sides have exhibited highly contentious and unprofessional behavior in the discovery herein. Fact discovery for this case opened nearly a year ago and everyone has known of Evelyn Singh all along. She has even been present at all of plaintiff's other depositions. This is a lame stall. Importantly, the record is sufficient to make the current summary judgment determination. The request is thus **DENIED**.

Both parties have also made numerous evidentiary objections. To the extent these statements or documents were not addressed in the order, the undersigned did not consider them in this motion and the objections to them are **DENIED AS MOOT**. In light of the ruling on the summary judgment motion, plaintiff's discovery motion is also **DENIED AS MOOT.**

## CONCLUSION

For all of the above-stated reasons, defendants' motion for summary judgment as to all of plaintiff's claims is **GRANTED**. Judgment will be entered separately in favor of defendants and against plaintiff.

**IT IS SO ORDERED.**

Dated: January 2, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11